UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

FIRST COMMUNITY BANK,

    Plaintiff,

    v.

LARRY L. MILLER,

    Defendant.
_____/

No. 09-80131 MISC PJH

**ORDER DENYING MOTION FOR APPOINTMENT OF RECEIVER IN AID OF ENFORCEMENT OF JUDGMENT**

Now before the court is the motion of plaintiff First Community Bank ("the Bank") to appoint a receiver in aid of enforcement of a judgment against defendant Larry L. Miller ("Miller"). Having carefully reviewed the parties' papers and considered their arguments and the relevant legal authority, and good cause appearing, the court hereby DENIES the Bank's motion for the following reasons.

**BACKGROUND**

On October 24, 2008, the Bank filed suit against Miller and his wife Kari Miller (in her marital capacity) in the U.S. District Court for the District of Arizona (First Community Bank v. Miller, C-08-1952 NVW (D. Ariz.)). The Bank alleged diversity jurisdiction, asserting that it was a California corporation and that the Millers resided in Arizona. The complaint asserted a single cause of action, for "breach of contract and breach of guaranty."

The basis of the suit was that two limited partnerships of which Larry Miller was a limited partner had borrowed money from the Bank in December 2006 to develop land

in Orland, Glenn County, California, and Miller had executed – without his wife's signature – a continuing commercial guaranty on behalf of the limited partnerships. The limited partnerships defaulted on the loan and ultimately filed for bankruptcy. The Bank was not repaid most of the money the limited partnerships had borrowed. The Bankruptcy Court eventually lifted the stay so the Bank could proceed against the Orland collateral. However, according to the Bank, the property is now worth approximately only $750,000.

As of October 2008, when the Bank filed suit in the District of Arizona, the unpaid principal balance (for which Miller was liable by virtue of the guaranty) was $5.744 million.

On November 19, 2008, the Bank filed a motion for summary judgment, as to liability for breach of the guaranty. On January 22, 2009, the court granted the motion. The court noted that "[s]ince the complaint seeks no adjudication of liability of the marital community, and any such liability appears to be precluded by A.R.S. § 25-214(C)(2), it appears that entry of judgment in favor of Plaintiff against Defendant Larry L. Miller will terminate this case."

The following day, the court ordered the parties either to submit a stipulation regarding quantification of damages, or to brief the question of damages. On February 26, 2009, the Bank filed a motion for summary judgment regarding damages. On March 19, 2009, the court granted the motion. In the meantime, Miller had filed a motion for reconsideration of the order granting summary judgment as to liability. That motion was denied on May 18, 2009.

Also on May 18, 2009, the court entered judgment against Miller for breach of guaranty as follows: $5.744 million for the principal debt, $578,709 in interest accrued from February 2008 to February 2009, and $49,791 in ancillary damages as provided by the contract.

On June 23, 2009, the Bank registered the judgment from the District of Arizona in this court.

On June 30, 2009, the Bank filed a motion in the District of Arizona case, for a judgment debtor exam and for an order compelling production of documents. The motion was granted on July 1, 2009. On July 31, 2009, the Bank requested a continuation of the judgment debtor exam.

On October 6, 2009, the Bank filed a writ of execution in the present miscellaneous case. The amount stated was $6.6 million. Although the Bank did not file an application for issuance of the writ of execution, the writ was issued by the clerk. The docket does not reflect any proof of service on Miller (who, as of that date, was not represented by counsel in the present case).

During the period from September to December 2009, the Bank issued subpoenas in the District of Arizona case in connection with the judgment debtor exam. In December 2009 and January 2010, the Millers provided responses to the discovery subpoenas. The Bank has apparently been unable to satisfy the judgment.

On April 9, 2010, the Bank filed a motion in the present case, seeking an order appointing a receiver in aid of enforcement of judgment. The Bank explains that it expects – based on "recent changes in the tax laws" (citing the federal Worker, Homeownership, and Business Assistance Act of 2009) – that Larry Miller will be receiving large tax refunds from "federal or state taxing authorit[ies]."

The property on which the Bank seeks to levy is Larry Miller's expected "federal or state tax refund and all instruments, including without limitation, all checks and warrants, payable to Miller evidencing federal or state tax refunds paid to Miller in the possession or which come into the possession of Miller." The Bank also states that it is planning on seeking another writ of attachment, although it has not yet submitted an application or proposed writ.

On May 5, 2010, Miller, represented by counsel, filed an opposition to the motion.

The Bank has recovered the Orland real property owned by the partnership in California, and there is no indication that Miller owns other property in California.

**DISCUSSION**

A.   Legal Standard

Under Federal Rule of Civil Procedure 66, federal courts are authorized to appoint receivers, but doing so is considered an "extraordinary remedy." See Canada Life Assurance Co. v. LaPeter, 563 F.3d 837, 844 (9th Cir. 2008).

There is "no precise formula" for determining whether a receiver should be appointed under federal law. Id. at 844. To determine whether appointing a receiver is appropriate, the court has "broad discretion" and can consider a "host of relevant factors," with no single factor being dispositive. Id. at 845. These factors include but are not limited to the following:

> (1) "whether [the party] seeking the appointment has a valid claim;" (2) "whether there is fraudulent conduct or the probability of fraudulent conduct," by the defendant; (3) whether the property is in imminent danger of "being lost, concealed, injured, diminished in value, or squandered;" (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) "the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property;" and, (7) "whether [the] plaintiff's interests sought to be protected will in fact be well-served by receivership."

See id. at 844 (citations omitted).

B.   Plaintiff's Motion

The Bank seeks appointment of a receiver in aid of enforcement of the judgment issued against Larry Miller by the District of Arizona. In its moving papers, the Bank asserts that while the pre-judgment appointment of a receiver in a diversity case is governed by federal law, the post-judgment appointment of a receiver is governed by state law (citing Federal Rule of Civil Procedure 64(a)).

Rule 64(a) states with regard to "seizing a person or property" that "at the commencement" of and "throughout" an action, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment," but that "a federal statute governs to the extent it applies." Fed. R. Civ. P. 64(a). The statute lists the "remedies available

under this rule" as arrest, attachment, garnishment, replevin, sequestration, and "other corresponding or equivalent remedies."

It appears that Rule 64 applies to pre-judgment proceedings, as it governs remedies available "throughout" an action. However, it does not refer to remedies available after the judgment has been entered. There is another Federal Rule that does govern receiverships – Federal Rule of Civil Procedure 66. The Ninth Circuit has held that federal law governs appointment of receivers in diversity cases in federal court, and it makes no distinction between pre-judgment and post-judgment appointments. See Canada Life, 563 F.3d at 842-44.

Rule 66 provides that "[t]hese rules govern an action in which the appointment of a receiver is sought or a receiver sues or is sued," and that "the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule." Fed. R. Civ. P. 66. Thus, pursuant to Rule 66, receivers are to follow traditional equity practice or local rules (where they exist) for administrative matters like the procedure for disposing of or distributing assets. See S.E.C. v. Vescor Capital Corp., 599 F.3d 1189, 1193 (10th Cir. 2010).

Registration of judgments is governed by 28 U.S.C. § 1963. Under § 1963, a judgment in an action for recovery of money or property

> entered in any court of appeals, district court, bankruptcy court, or in the Court of International Trade may be registered by filing a certified copy of the judgment in any other district . . . . A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner. . . .

28 U.S.C. § 1963. Thus, registering a judgment under § 1963 is considered the functional equivalent of obtaining a new judgment of the registering court. See In re Estate of Ferdinand E. Marcos Human Rights Litigation, 536 F.3d 980, 989 (9th Cir. 2008). Under § 1963, courts look to the law of the registering forum for rules regarding the execution of judgments. Id. at 987-88.

Similarly, Federal Rule of Civil Procedure 69(a), which governs the enforcement

5

of money judgments, provides that "[t]he procedure on execution – and in proceedings supplementary to and in aid of judgment or execution – must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1).  Thus, state law is applied under Rule 69(a) to garnishment, mandamus, arrest, contempt of a party, and appointment of receivers, when such actions are undertaken in aid of executing on a judgment.  Office Depot Inc. v. Zuccarini, 596 F.3d 696, 699 (9th Cir. 2010).

As a consequence of the operation of 28 U.S.C. § 1963 and Federal Rule of Civil Procedure 69(a), California law applies to the execution of the judgment in the present case because the judgment is registered in this district.  California Code of Civil Procedure § 695.010(a) provides, "Except as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment."  California Code of Civil Procedure § 699.710 provides that "all property that is subject to enforcement of a money judgment . . . is subject to levy under a writ of execution to satisfy a money judgment."  Under these provisions, all property of a judgment debtor can be used to satisfy a writ of execution.  Office Depot, 596 F.3d at 701.

California Code of Civil Procedure § 708.620 governs the appointment of a receiver in aid of the execution of a judgment in California state courts, providing that "[t]he court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment."  However, since there is already a federal rule that governs appointment of receivers (Rule 66), Code of Civil Procedure § 708.620 arguably does not apply here to govern the actual appointment of the receiver.

Furthermore, § 708.620 does not indicate where a receiver over property should be appointed.  However, California Code of Civil Procedure § 699.510 provides that the appropriate place to direct a writ of execution is the county where the levy is to be made: "[A]fter entry of a money judgment, a writ of execution shall be issued by the

clerk of the court upon application of the judgment creditor and shall be directed to the levying officer in the county where the levy is to be made and to any registered process server." Cal. Civ. P. Code § 699.510(a).

The combined effect of these provisions is to provide that if the property is properly subject to execution, and if the property is located in the Northern District of California, that district is an appropriate location to execute judgment through the appointment of a receiver. See Office Depot, 596 F.3d at 701.

Applying the above standards, the court finds that while the Bank may have established that it is entitled, under the factors articulated in Canada Life, to have a receiver appointed in aid of enforcement of the judgment, it has not demonstrated that the Northern District of California is the appropriate location to appoint a receiver, for the following reasons.

First, the location of the property is not clearly established. The property on which the Bank seeks to levy is Larry Miller's expected "federal or state tax refund and all instruments, including without limitation, all checks and warrants, payable to Miller evidencing federal or state tax refunds paid to Miller in the possession or which come into the possession of Miller." The Bank has not established where this property is located.

The Bank attempts to argue that Miller's residence is irrelevant, and that because federal income tax arises under federal law, and is payable to the federal government, it has no more connection to Arizona than it does to California. However, the Bank fails to cite any authority for this proposition. Nor does the Bank address the differences between the federal tax return and the state tax return, which it evidently also seeks to attach.

Additionally, the Bank asserts that a federal court has jurisdiction to enforce judgments over property situated in any state. However, the Bank fails to cite authority to support that contention, and also does not consider that judgments registered pursuant to § 1963 must be enforced in accordance with the laws of the registering

7

state. See, e.g., Office Depot, 596 F.3d at 701.

Second, the existence of the property is not established.  The Bank argues that it expects – based on "recent changes in the tax laws" that Larry Miller will receive large tax refunds.  The Bank's only basis for assuming that Miller will receive any refund is its belief that in August 2009, Miller deposited a check from the U.S. Treasury, "which appears to be a refund from tax year 2006."  Thus, the existence of these anticipated tax refunds is purely speculative at this point.

Third, while the Bank has not clarified whether these anticipated tax refunds will be paid out on the basis of a tax return filed by Larry Miller alone, or on the basis of a return filed by Larry Miller jointly with his wife, the court questions the propriety or advisability of an order that could in effect impose California law on an Arizona community.  Moreover, the Bank never explains why it is seeking to have a receiver appointed by this court, rather than by the District of Arizona, the court that entered the judgment against Miller.

## CONCLUSION

In accordance with the foregoing, the court hereby DENIES plaintiff's motion for appointment of a receiver.

**IT IS SO ORDERED**

Dated: June 18, 2010

PHYLLIS J. HAMILTON
United States District Judge